## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff-Respondent,

v.                                    **CIV-05-1148 JP/LAM**
                                      **CR- 03-0766 JP**

RICARDO CUEVAS,

       Defendant-Movant,

# PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

## PROPOSED FINDINGS

    1.    **THIS MATTER** is before the Court on Ricardo Cuevas' ***Motion by a Person in Federal Custody to Vacate, Set Aside and Correct a Conviction and Sentence Pursuant to 28 U.S.C. § 2255*** (*Doc. 1*). Mr. Cuevas is represented by counsel. He is currently serving a sentence pursuant to a ***Plea Agreement*** (*Cr. Doc. 518*) (hereinafter, "Plea Agreement") entered into on August 12, 2004, and a ***Judgment in a Criminal Case*** (*Cr. Doc. 569*) filed on November 1, 2004. He did not file a direct appeal and brings his motion pursuant to 28 U.S.C. § 2255 with new counsel. In his motion, Mr. Cuevas argues that his guilty pleas were not knowing, intelligent and voluntary because they lacked an adequate factual basis; because they were involuntarily induced by the ineffective assistance of his previous counsel; and because the Court failed to conduct an adequate

---

[1]Within ten (10) days after a party is served with a copy of these proposed findings and recommended disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommended disposition. A party must file any objections with the clerk of the United States District Court within the ten-day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.

inquiry into his claims of ineffective assistance of counsel in procuring his guilty pleas. Additionally, Mr. Cuevas argues that his previous counsel rendered ineffective assistance in his plea proceeding by representing him with conflicts of interest which adversely affected his counsel's performance; by failing to properly advise him during his plea negotiations with the government; and by failing to conduct an adequate investigation of his case. Mr. Cuevas asks for an evidentiary hearing on his motion and, as relief, asks the Court to vacate his guilty pleas and reset his case for trial on all of the charges contained in his superceding indictment.[2]

        2.      Mr. Cuevas entered into the Plea Agreement pursuant to FED. R. CRIM. P. 11(c)(1)(C). In the Plea Agreement, Mr. Cuevas agreed to plead guilty to one count of conspiracy to distribute 500 grams and more of a mixture and substance containing methamphetamine (in violation of 21 U.S.C. § 846); two counts of possession with intent to distribute 50 grams and more of methamphetamine (in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)); one count of possession of a firearm in furtherance of a drug trafficking crime (in violation of 18 U.S.C. § 924(c)(1)(A));[3] and one count of use of a telephone to facilitate a drug trafficking offense (in violation of 21 U.S.C. § 843(b)). *See* Plea Agreement at ¶ 3. The Plea Agreement also included Mr. Cuevas' agreement to forfeit to the United States all of his right, title and interest to certain real estate located in Fruitland, New Mexico; certain currency, motor vehicles and handguns; and any interest he may have had in any asset derived from, or used in, the commission of the offenses in his case. *Id.* at ¶¶ 9-15. In the Plea Agreement, the parties stipulated, pursuant to FED. R. CRIM. P. 11(c)(1)(C), that Mr. Cuevas' term of imprisonment would be one hundred and eighty months, followed by a five year term

---

[2] The superseding indictment is in the record at *Cr. Doc. 381*.

[3] The drug trafficking crime in question was conspiracy to distribute 500 grams and more of a mixture and substance containing methamphetamine in violation of 21 U.S.C. § 846. *See* Plea Agreement at ¶ 3.

of supervised release. *Id.* at ¶ 7(a).  Additionally, Mr. Cuevas agreed to waive his right to appeal his conviction and imposition of the sentence agreed to in the Plea Agreement.  *Id.* at ¶ 16.

      3.    Magistrate Judge Robert Scott conducted Mr. Cuevas' change of plea hearing on August 12, 2004.  At the hearing, Mr. Cuevas entered his guilty pleas and Judge Scott found that Mr. Cuevas was fully competent and capable of entering an informed plea; that he was aware of the nature of the charges against him and the consequences of his pleas; and that his pleas were knowing and voluntary and supported by independent evidence of the elements of the offenses charged.  *See Transcript of Ricardo Cuevas Plea Hearing* (8/12/04) at 12.

      4.    District Judge James Parker conducted Mr. Cuevas' sentencing hearing on October 28, 2004.  At the sentencing hearing, Judge Parker found that Mr. Cuevas knowingly, voluntarily and intelligently entered his guilty pleas and Judge Parker accepted his guilty pleas.  *See Transcript of Ricardo Cuevas Sentencing Hearing* (10/28/04) at 3.  Judge Parker sentenced Mr. Cuevas to a total term of one hundred and eighty months of imprisonment, followed by a five year term of supervised release.  *Id.* at 8-9.

      5.    At his change of plea hearing and his sentencing hearing, Mr. Cuevas was represented by his previous counsel, Joe Romero.  *See Transcript of Ricardo Cuevas Plea Hearing* (8/12/04) at 2; *Transcript of Ricardo Cuevas Sentencing Hearing* (10/28/04) at 2.

### Whether Mr. Cuevas' Guilty Pleas Were Knowing, Intelligent and Voluntary

      6.    Mr. Cuevas contends that his guilty pleas were not knowing, intelligent and voluntary because they lacked an adequate factual basis.  Mr. Cuevas argues, in conclusory fashion in his motion that the factual basis for his pleas "is virtually non-existent," and that the record "is effectively silent to provide an adequate factual basis" for any of his pleas.  ***Motion by a Person in Federal***

*Custody to Vacate, Set Aside and Correct a Conviction and Sentence Pursuant to 28 U.S.C. § 2255* (*Doc. 1*) at 17.  More specifically, Mr. Cuevas argues "that the factual basis for his guilty plea to the charge of using and carrying a firearm in relation to a drug trafficking offense" pursuant to 18 U.S.C. § 924(c)(1)(A) is "particularly undeveloped," as there is no evidence to show that he used or carried a firearm in relation to an underlying drug offense. *Id.* at 17-18.  Additionally, Mr. Cuevas argues in his motion that his plea to having violated 18 U.S.C. § 924(c)(1)(A) was not knowing and voluntary because the record shows that he did not understand the "in relation to" element of this charge and that he disputed the factual basis of this element of the charge at his change of plea hearing.  *Id.* at 20.

7.     Before judgment is entered on a guilty plea, the Court must determine that there is a factual basis for the plea.  *See* FED. R. CRIM. P. 11(b)(3); *see also United States v. Barker*, 681 F.2d 589, 592 (9th Cir. 1982).  This provision of Rule 11 does not require the Court to weigh evidence or predict what a jury would do.  *See United States v. Smith*, 160 F.3d 117, 121 (2nd Cir. 1998).  Rather, the Court must "assure itself simply that the conduct to which the defendant admits is in fact an offense under the statutory provision under which he is pleading guilty." *United States v. Maher*, 108 F.3d 1513, 1524 (2d Cir. 1997).  This matching of the admitted facts to the elements of the charge "is designed 'to protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge.'"  *McCarthy v. United States*, 394 U.S. 459, 467 (1969) (quoting FED. R. CRIM. P. 11, *Advisory Committee Note, 1966 Amendments*).[4]  The factual basis for

---

[4]One commentator has described the purpose of Rule 11(b)(3) (formerly Rule 11(f)) as "salutory," in that "[a] person may well know what he or she has done but not be sufficiently skilled in law to recognize that these acts do not constitute the offense with which [he or she] is charged."  1A Charles Alan Wright, et al., Federal Practice & Procedure (continued...)

4

a guilty plea is not limited solely to a defendant's statements at the plea hearing. *See United States v. Moran*, ___ F.3d ___, 2006 WL 1755954 at *3 (10th Cir. 2006) (citing *Howard v. United States*, 135 F.3d 506, 509 (7th Cir. 1998)).  Instead, the Court "may look to answers provided by counsel for the defense and government, the presentence report, or . . . whatever means is appropriate in a specific case - so long as the factual basis is put on the record." *Id.* (internal quotation marks and citations omitted).

8.     The government argues that Mr. Cuevas' claims challenging the factual basis for his guilty pleas are procedurally barred under *Bousley v. United States*, 523 U.S. 614 (1998), because Mr. Cuevas did not file a direct appeal.  In *Bousley*, which involved a collateral attack on a guilty plea, the Supreme Court held that "the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." *Id.* at 621.  In this case, it is undisputed that Mr. Cuevas did not file a direct appeal and that he waived the right to appeal his conviction and sentence in the Plea Agreement.  *See* Plea Agreement at ¶ 16.  Thus, Mr. Cuevas is procedurally barred from presenting his challenge to the factual basis for his guilty pleas unless he can show: (1) cause for the procedural default and resulting prejudice; or (2) actual innocence.  *See Bousley v. United States*, 523 U.S. at 622-623.  However, the Court need not address the procedural bar issue with regard to these claims because even if the claims were not procedurally defaulted, they fail on the merits.  *See United States v. Wright* 43 F.3d 491, 496 (10th Cir. 1994) (court need not address whether procedural default bars assertion of claim in § 2255 proceeding when claim would fail on the merits in any event).

_____

[4](...continued)
§ 174 (2006).

9.     Mr. Cuevas' claims challenging the factual basis for his guilty pleas are without merit. First, contrary to Mr. Cuevas' argument, the record is not silent with regard to the factual basis for his pleas.  Instead, the record shows that there was a lengthy recitation of the factual basis for his guilty pleas by the government's attorney at the beginning of the joint change of plea hearing held on August 12, 2004.[5]  Although Mr. Cuevas asserted at the hearing that the gun found in the closet of his residence was in a suitcase and unloaded, he admitted at the hearing that the government attorney's factual statement, as it related to him, was true and correct.  *See Transcript of Ricardo Cuevas Plea Hearing* (8/12/04) at 10-11.  Mr. Romero also told Judge Scott at the hearing, in front of Mr. Cuevas, that the factual statement by the government was true and correct, and Mr. Cuevas did not object.  *Id.* at 11.  The Presentence Report for Mr. Cuevas (hereinafter, "PSR") also contained a lengthy statement of facts.  *See* PSR at ¶¶ 109-235.  At his sentencing hearing on October 28, 2004, Mr. Cuevas admitted to Judge Parker that all of the statements of fact in the PSR were true and correct.  *See Transcript of Sentencing Hearing of Ricardo Cuevas* (10/28/04) at 2.  Additionally, at the sentencing hearing, after admitting to the facts in the PSR, Mr. Cuevas told Judge Parker, "I did everything."  *Transcript of Sentencing Hearing of Ricardo Cuevas* (10/28/04) at 7.  At the

---

[5]Judge Scott held the hearing on August 12, 2004, to accept the pleas of Mr. Cuevas and his co-defendants Jose Luis Farias-Blanco and Eduardo Ortega.  *See Transcript of Jose Luis Farias-Blanco Plea Hearing* (8/12/04); *Transcript of Eduardo Ortega Plea Hearing* (8/12/04); *Transcript of Ricardo Cuevas Plea Hearing* (8/12/04).  Judge Scott accepted Mr. Farias-Blanco's pleas first, and then accepted Mr. Ortega's pleas and Mr. Cuevas' pleas.  *Id.*  It is obvious from the hearing transcripts that Mr. Cuevas and his previous counsel, Mr. Romero, were present for the entire hearing.  *Id.*  At the beginning of the hearing, Judge Scott stated that the hearing was set for the purpose of accepting pleas from all three defendants and that counsel for the government had asked to state the rather lengthy factual basis for the pleas of all three defendants at one time.  *See Transcript of Jose Luis Farias-Blanco Plea Hearing* (8/12/04), at 2.  The record shows that counsel for all three defendants agreed to a single statement of the factual basis for the defendants' pleas.  *Id.*  The attorney for the government stated the factual basis for the pleas in connection with Mr. Farias-Blanco's plea.  *See Transcript of Jose Luis Farias-Blanco Plea Hearing* (8/12/04), at 9-15.  Before he did so, Judge Scott told all three defendants, twice, to pay particular attention to the statement of facts because it was only going to be stated once and because he was going to ask each Defendant if those facts were true or, alternatively, if they wanted to challenge any of the facts or ask that they be modified.  *Id.* at 2-3; 8-9.

sentencing hearing, Judge Parker made specific reference to the factual statements in the PSR, and adopted those factual statements as the factual findings of the Court.  *Id.* at 2-3.  Second, Mr. Cuevas' arguments regarding the crime of using or carrying a firearm in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) are not relevant to his guilty pleas because he did not plead guilty to that crime.  Instead, he pled guilty to the crime of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A).  *See*  Plea Agreement at ¶ 3.  While the case law discussing the elements of the "use or carrying" offense under 18 U.S.C. § 924(c)(1)(A) has some relevance to the elements of the "possession" offense under that statute,[6] Mr. Cuevas has made no arguments in his motion or his traverse relating that case law case law to the factual basis for the "possession" offense in this case.

10.     In his traverse, Mr. Cuevas makes a conclusory argument that the record is insufficient to demonstrate that there was an adequate factual basis for his plea to possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A).  ***See Movant's Traverse in Support of the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2255*** (*Doc. 9*) at 8.  In connection with this argument, Mr. Cuevas asserts that he never admitted to facts sufficient to support this claim.  *Id.*  The Court finds this argument to be without merit.  At both his change of plea hearing and his sentencing hearing, Mr. Cuevas admitted, *inter alia*, the government's factual allegations which included statements that a loaded Beretta .45 caliber handgun, along with magazines and ammunition, were found in the master bedroom closet at his residence, where activities related to his drug trafficking crimes took place, in close proximity to 1.5 net grams of

---

[6]*See United States v. Iiland*, 254 F.3d 1264, 1272 (10th Cir. 2001) (cases discussing "use and carrying" offense informed court's decision regarding "possession" offense).

methamphetamine and $2,178.00 in cash that were found in the master bedroom nightstand.[7]  These

facts, together with the other facts admitted by Mr. Cuevas at his plea and sentencing hearings, and

also his plea of guilty to the underlying drug trafficking crime of conspiracy to distribute 500 grams

and more of a mixture and substance containing methamphetamine, provide ample support for his

plea of guilty to the crime of possession of a firearm in furtherance of a drug trafficking crime in

violation of 18 U.S.C. § 924(c)(1)(A).  *See, e.g., United States v. Avery*, 295 F.3d 1158, 1180-1181

(10th Cir. 2002) (weapons found in home from which defendant sold cocaine, including one firearm

found inside closet near front door, other firearms found in bedroom where drugs were found, and

two loaded firearms found in bedroom closet along with safe containing cash used in drug

transactions, coupled with government agent testimony that it was common for drug dealers to keep

guns nearby for protection, strongly suggested that defendant intended to keep firearms available for

use if needed during a drug transaction and satisfied required nexus between defendant's possession

of firearms and his drug trafficking activity); *United States v. Wahl*, 290 F.3d 370, 376-377 (D.C. Cir.

2002) (presence of loaded, illegally possessed firearm in defendant's residence, where he was found,

in close proximity to 5.6 grams of cocaine base and a small amount of cash, could lead jury to infer

that gun provided a defense or deterrent in furtherance of the drug trafficking for which the defendant

was arrested).

---

[7]The government attorney's factual statement at Mr. Cuevas' change of plea hearing included a statement that while searching Mr. Cuevas' residence on April 23, 2003, government agents found, *inter alia*, "1.5 net grams of methamphetamine and $2,178 in U.S. currency in the master bedroom nightstand," and "a loaded Beretta, bearing serial number 052197NC, five magazines and ammunition was seized from the master bedroom closet[.]" *Transcript of Jose Luis Farias-Blanco* (8/12/04) at 14.  The PSR included similar factual statements stating that in the search of Mr. Cuevas' residence government agents found "1.5 net grams of methamphetamine (.39 grams actual) and $2,178 in U.S. currency in the master bedroom night stand" and seized "[a] loaded Beretta .45 caliber handgun, five magazines, and ammunition . . . from the master bedroom closet."  PSR at ¶ 232.

11.     Mr. Cuevas also contends that his pleas were not knowing, intelligent and voluntary because they were involuntarily induced by the ineffective assistance of Mr. Romero.  *See Motion by a Person in Federal Custody to Vacate, Set Aside and Correct a Conviction and Sentence Pursuant to 28 U.S.C. § 2255* (*Doc. 1*) at 16. This is an ineffective assistance of counsel claim which the Court will address below.

12.     Mr. Cuevas also contends that his pleas were not knowing, intelligent and voluntary because the Court failed to conduct an adequate inquiry into his claims of ineffective assistance of counsel in procuring his guilty pleas.  *See Motion by a Person in Federal Custody to Vacate, Set Aside and Correct a Conviction and Sentence Pursuant to 28 U.S.C. § 2255* (*Doc. 1*) at 16, 21-23. The government contends that this claim is procedurally defaulted because Mr. Cuevas failed to raise it on direct appeal.  However, this claim is more reasonably construed as an ineffective assistance of counsel claim and ineffective assistance of counsel claims are not defaulted for failure to raise them on direct appeal.  *See Massaro v. United States*,  538 U.S. 500, 503-504 and 509 (2003) (holding that an ineffective assistance of counsel claim may be brought in a collateral proceeding under § 2255, regardless of whether the petitioner raised the claim on direct appeal).  Therefore, the Court will consider this claim on its merits in connection with Mr. Cuevas' other ineffective assistance of counsel claims which are discussed below.

## Ineffective Assistance of Counsel

### *Guilty Pleas Induced by Ineffective Assistance of Counsel*

13.     Mr. Cuevas argues that his guilty pleas were involuntarily induced by the ineffective assistance of Mr. Romero.  This is essentially an argument that Mr. Cuevas' guilty pleas were the unconstitutional result of Mr. Romero's cumulative ineffective assistance of counsel.  Because the

Court finds, for the reasons discussed below, that Mr. Romero's performance was not constitutionally ineffective, it finds no merit to this argument.

### Inquiry by Court into Objection to Counsel

14.     Mr. Cuevas contends that the Court failed to conduct an adequate inquiry into his claims of ineffective assistance of counsel in procuring his guilty pleas. *See **Motion by a Person in Federal Custody to Vacate, Set Aside and Correct a Conviction and Sentence Pursuant to 28 U.S.C. § 2255** (Doc. 1)* at 16, 21-23. Specifically, Mr. Cuevas asserts that at his change of plea hearing he objected to Mr. Romero's representation but Judge Scott failed to conduct an adequate inquiry into his objections. *Id.* at 23.     Additionally, he argues that at his sentencing hearing Judge Parker failed to conduct an adequate inquiry into his claims of ineffective assistance of counsel. *Id.* The Court finds no merit to these arguments.

15.     When a defendant expresses dissatisfaction with his attorney's representation, "[a] district court should engage in an inquiry sufficient to explore and understand the defendant's concerns about the inadequacy of counsel." *United States v. Vargas*, 316 F.3d 1163, 1167 (10th Cir. 2003). However, "[t]here can be no bright lines drawn as to what constitutes 'adequate' inquiry." *Id.* "[T]he fundamental requirement is that the district court's inquiry uncover the nature of the defendant's concerns." *Id.* The record here shows that at his change of plea hearing, Mr. Cuevas expressed dissatisfaction with Mr. Romero's representation. Specifically, Mr. Cuevas answered "No," when Judge Scott asked him if he was satisfied with Mr. Romero's representation. *See Transcript of Ricardo Cuevas Plea Hearing* (8/12/04) at 4. Judge Scott inquired further and the following exchange took place:

> THE COURT:  And what are the issues that you have, sir?

THE DEFENDANT:  Just that it's not gone right, but I'll plead guilty.

THE COURT: I asked Mr. Ortega if he wanted to have the Court appoint a new lawyer to represent you [sic].  What is your feeling in that regard?[8]

THE DEFENDANT:  None.  The same thing that he said, you know.  It affects everybody and - -  it affects everybody.[9]

THE COURT:  Mr. Braun, do you feel inclined to make a statement to this defendant indicating as to whether or not the plea is acceptable to the government and would be any different depending on which attorney was representing this defendant?

MR. BRAUN: There would not be any difference, Your Honor, the same with Mr. Eduardo Ortega.  If the plea is not taken today, we will go to trial.  I will ask that [sic] his satisfaction [sic] stems from the potential sentence to be imposed or from an actual belief that he is not guilty.

THE COURT:  Can you answer that question?

THE DEFENDANT:  Before the superseding indictment, supposedly they were offering me 14 years, but there was no plea offer, no paperwork.  But now the superseding indictment they're offering is 15 years and a gun charge and mandatory minimum, which my attorney says that I won't get the mandatory minimum.  And now I've got that plus five years for the gun charge.  I don't get that.  I don't understand that.

THE COURT:  What's being asked is whether or not you're concerned over your legal representation because of the possible sentence you might receive or because you maintain you're not guilty of the offense.

---

[8]This is an apparent reference to an earlier exchange at the hearing between Judge Scott and Mr. Cuevas' co-defendant Eduardo Ortega.  *See Transcript of Eduardo Ortega Plea Hearing* (8/12/04) at 4-8.  During that exchange, Mr. Ortega expressed dissatisfaction with his attorney and Judge Scott questioned Mr. Ortega on the subject at some length.  Judge Scott's discussion with Mr. Ortega and the comments of Mr. Ortega's counsel suggest that Mr. Ortega believed that he could get a better plea agreement with a different attorney but that he did not want to jeopardize the joint plea arrangement for all three co-defendants.  *Id.*

[9]This is an apparent reference to the fact that the guilty pleas of Mr. Farias-Blanco, Mr. Ortega and Mr. Cuevas were joint pleas that were contingent on one another.  *See Transcript of Eduardo Ortega Plea Hearing* (8/12/04) at 6-7.

THE DEFENDANT:  I'm guilty.

THE COURT:  And under those circumstances, you want to proceed this afternoon with the entry of your plea of guilty?

THE DEFENDANT:  Yeah.

*Transcript of Ricardo Cuevas Plea Hearing* (8/12/04), at 4-5.  Judge Scott then resumed the hearing and Mr. Cuevas did not revisit the subject of dissatisfaction with his attorney.  Prior to the end of the hearing, Judge Scott asked Mr. Cuevas, *inter alia*, if he had had enough time to read the Plea Agreement and review it with his attorney before he signed it and if he understood the terms of the Plea Agreement, to which he answered, "Yes."  *Id.* at 6-7.  Thereafter, Mr. Cuevas  pled guilty to Counts 1,2,3,5 and 25 of the superceding indictment.  *Id.* at 11-12.  At his sentencing hearing, Mr. Cuevas made no objection to Mr. Romero's representation; however, Mr. Romero gave a statement on Mr. Cuevas' behalf during which he said:

> At no time did he ever tell me that he wanted to challenge these charges, but we did tussle back and forth quite a bit in terms of what agreement I could work out for him and what negotiated resolution I could work out for him.

*Transcript of Sentencing Hearing* (10/28/04) at 5.  Judge Parker gave Mr. Cuevas the opportunity to speak at the sentencing hearing but in his statement Mr. Cuevas said nothing about dissatisfaction with Mr. Romero's representation.  *Id.* at 7.

16.     The record here indicates that Judge Scott made adequate inquiry into Mr. Cuevas' dissatisfaction with his counsel.   When Mr. Cuevas expressed dissatisfaction with his counsel, Judge Scott stopped the hearing and inquired about it.  He asked Mr. Cuevas what his feeling was about having another attorney appointed to represent him, to which Mr. Cuevas responded, "None." Judge Scott also referred back to his earlier exchange with Mr. Ortega about the appointment of new counsel for him during which Mr. Cuevas was present.   From Judge Scott's exchange with

Mr. Cuevas, it appears that Mr. Cuevas, like Mr. Ortega, was concerned that he might get a better plea agreement with a different lawyer.  When the government attorney said that was not the case, Mr. Cuevas indicated that he would proceed to plead guilty and he made no effort to pursue the issue of dissatisfaction with his attorney.  Mr. Cuevas' concern with the terms of his plea agreement, and a possible better deal, was echoed in Mr. Romero's comments at the sentencing hearing that he and Mr. Cuevas had to "tussle back and forth quite a bit" on the terms of a plea agreement. Mr. Romero's comments in this regard were not a "red flag" to Judge Parker indicating that Mr. Cuevas was dissatisfied with his attorney warranting further inquiry.  Moreover, when Judge Parker gave Mr. Cuevas the opportunity to speak at his sentencing hearing, he expressed no objection to Mr. Romero's representation.  Thus, the record does not show that Judge Scott or Judge Parker failed to make adequate inquiry into Mr. Cuevas' dissatisfaction with Mr. Romero's representation.

### Conflict of Interest Related to Counsel's Representation of Jose Medrano

17.     Mr. Cuevas argues that Mr. Romero rendered ineffective assistance in connection with his change of plea by representing Mr. Cuevas with an actual conflict of interest which adversely affected Mr. Romero's performance.  Specifically, Mr. Cuevas contends that Mr. Romero had an actual conflict of interest because he represented a confidential informant in Mr. Cuevas' case named Jose Medrano, while he represented Mr. Cuevas, and did not disclose this joint representation to either Mr. Cuevas or the Court.[10]  Mr. Cuevas contends that Mr. Romero's representation of

---

[10]In his motion, Mr. Cuevas alleges that Mr. Romero represented Jose Medrano before he represented Mr. Cuevas.  *See Motion by a Person in Federal Custody to Vacate, Set Aside and Correct a Conviction and Sentence Pursuant to 28 U.S.C. § 2255* (*Doc. 1*) at 27.  However, in his traverse, Mr. Cuevas alleges that Mr. Romero represented Jose Medrano at the same time he was representing Mr. Cuevas.  *See Movant's Traverse in Support of the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2255* at 10.  From the parties' submissions and the record, it appears that Mr. Romero represented Mr. Medrano while he was representing Mr. Cuevas. *See infra* note 12.

Mr. Medrano divided Mr. Romero's loyalties and prevented him from vigorously pursuing a motion to suppress wiretaps, a motion to disclose a confidential informant and a motion to suppress evidence by pointing out evidence which showed that the government relied on Jose Medrano as a confidential informant, even though he was not reliable, and that the government made material misstatements of fact about Jose Medrano's criminal record in affidavits in support of requests for warrants. *See Motion by a Person in Federal Custody to Vacate, Set Aside and Correct a Conviction and Sentence Pursuant to 28 U.S.C. § 2255* (*Doc. 1*) at 27. Mr. Cuevas also contends that "but for" Mr. Romero's representation of Jose Medrano, Mr. Romero would have investigated efforts by Jose Medrano to blame Mr. Cuevas in order to conceal Jose Medrano's own drug distribution activities. *Id.* Additionally, Mr. Cuevas contends that Mr. Romero failed to challenge unspecified affidavits in support of search warrants which appeared to rely on false statements by Jose Medrano. *Id.* at 28. Mr. Cuevas argues that this conflict of interest caused Mr. Romero to recommend a guilty plea to Mr. Cuevas because Mr. Romero wanted, in part, to protect Jose Medrano, and to avoid investigating and cross-examining Jose Medrano in Mr. Cuevas' case. *Id.* at 28-29.

18. For a defendant to prevail on an ineffective assistance of counsel claim based on a conflict of interest involving multiple representation where no objection has been raised to the Court, he must show "that a conflict of interest actually affected the adequacy of his representation [and he] need not demonstrate prejudice in order to obtain relief." *Cuyler v. Sullivan*, 446 U.S. 335, 349-350 (1980), citing *Holloway v. Arkansas*, 435 U.S. 475, 487-491 (1978). *See also Mickens v. Taylor*, 535 U.S. 162, 168 (2002) (noting the holding in *Cuyler v. Sullivan*). However, "until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." *Cuyler v. Sullivan*, 446 U.S. at 350,

citing *Glasser v. United States*, 315 U.S. 60, 72-75 (1942).  In this regard, the Tenth Circuit has stated:

> An actual conflict of interest results if counsel was forced to make choices advancing other interests to the detriment of his client. *Without a showing of inconsistent interests, any alleged conflict remains hypothetical, and does not constitute ineffective assistance. Indeed, to demonstrate an actual conflict of interest, the petitioner must be able to point to specific instances in the record which suggest an impairment or compromise of his interests for the benefit of another party.*

*United States v. Alvarez*, 137 F.3d 1249, 1252 (10th Cir. 1998) (emphasis added and internal citations and quotation marks omitted).

19.     Jose Medrano was prosecuted for federal drug crimes in this District somewhat later than Mr. Cuevas in a separate case.[11] According to the government, law enforcement agents were investigating Mr. Medrano for drug trafficking offenses in the Farmington, New Mexico, area at the same time they were investigating Mr. Cuevas for drug trafficking offenses in that area.  *See* **United States' Response to Defendant's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255** (*Doc. 7*) at 2.   The parties do not dispute that Mr. Romero represented Jose Medrano in connection with his federal criminal case while Mr. Romero was also representing Mr. Cuevas in his case.[12]

---

[11]The Court's ACE docketing system shows that Jose Medrano was prosecuted in Case No. CR-03-895 LH.

[12]It appears from the record and the parties' submissions that Mr. Romero began representing Mr. Cuevas on April 28, 2003, the date of his arraignment, and that he represented Mr. Cuevas continuously, at least through his sentencing hearing on October 28, 2004.  *See* **Clerk's Minutes of Arraignment** (*Doc. 63*), **Entry of Appearance** (*Doc. 64*) and **Transcript of Sentencing Hearing of Ricardo Cuevas** (10/28/04), all filed in Case No. CR-03-766 JP. The Court's ACE docketing system shows that Mr. Romero entered his appearance on behalf of Jose Medrano in his federal drug prosecution on January 16, 2004, and represented him in that case continuously until March 8, 2005. *See* **Entry of Appearance** (*Doc. 7*) and **Order for Substitution of Counsel** (*Doc. 58*), filed in Case No. CR-03-895 LH.

15

20.     The Court finds that Mr. Cuevas' arguments regarding Mr. Romero's conflicted representation of Jose Medrano are conclusory and speculative and based almost entirely on an unsubstantiated assumption that Jose Medrano was a confidential informant in Mr. Cuevas' case.  Mr. Cuevas fails to point to any evidence in the record suggesting that Jose Medrano actually was a confidential informant in Mr. Cuevas' case and the government denies that Jose Medrano was ever a confidential informant in Mr. Cuevas' case.[13]   The government acknowledges that the Drug Enforcement Administration's file title for the investigation of Jose Medrano and Mr. Cuevas was "Medrano, Jose," but attributes this title to the fact that both men were being investigated at the same time and the fact that Jose Medrano was a target of the investigation, not a confidential informant.  *See **United States' Response to Defendant's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255** (Doc. 7)* at 2, n. 2 and 13, n. 8.  In his traverse, Mr. Cuevas appears to take the position that Mr. Romero's concurrent representation of Jose Medrano and Mr. Cuevas alone should suffice to demonstrate an actual conflict of interest which adversely affected the adequacy of his representation of Mr. Cuevas.  *See **Movant's Traverse in Support of the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2255** (Doc. 9)* at 10-11; however, this argument is based on conclusory assertions that the joint representation "may have" adversely affected Mr. Romero's efforts on behalf of Mr. Cuevas in this case based on a desire to protect Mr. Medrano.  *Id.* at 11.  Having reviewed the record and the parties' submissions, the Court concludes that Mr. Cuevas has not shown any support in the record for  his contention that Mr. Romero's joint representation of Jose Medrano constituted an actual conflict of interest.  Nor has he shown any support for his contention that such joint representation adversely affected

---

[13]This denial is in the record in the ***United States' Response to Defendant's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255*** (*Doc. 7*) at 13.

Mr. Romero's performance on behalf of Mr. Cuevas.  Therefore, this claim has no merit under the standard set out in *Cuyler v. Sullivan*, 446 U.S. 335 (1980).

### Conflict of Interest at Change of Plea Hearing

21.     Mr. Cuevas also contends that a conflict of interest arose at his change of plea hearing when he expressed dissatisfaction with Mr. Romero's representation.  *See **Motion by a Person in Federal Custody to Vacate, Set Aside and Correct a Conviction and Sentence Pursuant to 28 U.S.C. § 2255** (Doc. 1)* at 30-32.  Mr. Cuevas alleges that Mr. Romero was conflicted at the hearing between his duty to assist Mr. Cuevas in presenting his dissatisfaction with Mr. Romero to Judge Scott and Mr. Romero's natural desire to protect his own interests by refusing to admit to a claim of ineffectiveness.  *Id.* at 31.  Mr. Cuevas asserts that Mr. Romero resolved this conflict at the hearing by ignoring Mr. Cuevas' expression of dissatisfaction and doing nothing to help him explain his dissatisfaction to Judge Scott.  *Id.*  Plaintiff argues that the standard in *Cuyler v. Sullivan*, 446 U.S. 335 (1980),[14] should be applied to this alleged conflict which would not require a showing of prejudice.

22.     However, the Court concludes that this argument is subject to analysis under the ineffective assistance of counsel standard enunciated in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), which requires a showing that an attorney's performance was deficient and that his deficient performance prejudiced his client.  A showing of deficient performance requires that Mr. Cuevas overcome the strong presumption that his counsel's conduct was within the wide

---

[14]In *Cuyler v. Sullivan*, 446 U.S. 335, 349-350 (1980), the Supreme Court articulated a presumption of prejudice standard for cases involving conflicts of interest.  However, since the Supreme Court's decision in *Mickens v. Taylor*, 535 U.S. 162, 174-175 (2002), cautioning that some circuits have "unblinkingly" applied *Cuyler* to "all kinds of alleged attorney ethical conflicts," (citation and quotation omitted), the Tenth Circuit has suggested in an unpublished decision that it considers the *Cuyler* standard to be limited to conflicts of interest involving multiple representation.  *See Montoya v. Lytle*, No. 01-2318, 2002 WL 31579759, at **2 (10th Cir. Nov. 20, 2002) (unpublished).

range of reasonable professional assistance.  *See Strickland v. Washington*, 466 U.S. at 689.

Moreover, because Mr. Cuevas pled guilty, the prejudice prong of the *Strickland* standard requires

him to "show that there is a reasonable probability that, but for counsel's errors, he would not have

pleaded guilty and would have insisted on going to trial."  *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

23.     The Court is not convinced that Mr. Romero was operating under a conflict of interest

at the change of plea hearing.   Mr. Romero did not object to Mr. Cuevas' expression of

dissatisfaction with his representation or argue against it.  *See Transcript of Plea Hearing of*

*Ricardo Cuevas* (8/12/04) at 4-5.  Nor did Mr. Romero interfere with Judge Scott's questioning of

Mr. Cuevas on the subject.  *Id.*  However, even if it is assumed that Mr. Romero's loyalties were

conflicted at the hearing, Mr. Cuevas has not shown prejudice.   Judge Scott was alerted to

Mr. Cuevas' dissatisfaction with Mr. Romero at the change of plea hearing when Mr. Cuevas

answered, "No," to Judge Scott's question about whether he was satisfied with his attorney's

representation.[15]  Judge Scott immediately inquired into the matter, asked Mr. Cuevas if he wanted

a new lawyer, which he did not request, and determined, based on his questioning of Mr. Cuevas, that

Mr. Cuevas desired to plead guilty and was pleading guilty knowingly, intelligently and voluntarily.

*Id.* at 4-12.  The record, including Mr. Cuevas' submissions, fails to show that he would not have

pleaded guilty if Mr. Romero had behaved differently at the plea hearing.  Thus, the Court finds no

basis for Mr. Cuevas' allegations that he was prejudiced by Mr. Romero's conduct at the plea hearing

and denied effective assistance of counsel under the *Strickland* standard.

### *Failure to Give Proper Advice During Plea Negotiations*

24.     Mr. Cuevas contends that Mr. Romero rendered ineffective assistance by failing to

properly advise him during his plea negotiations with the government.  He contends that Mr. Romero

---

[15]*See Transcript of Ricardo Cuevas Plea Hearing* (8/12/04) at 4.

failed to advise him accurately of the adverse consequences of rejecting the government's plea offers. Mr. Cuevas alleges that Mr. Romero repeatedly promised him an unrealistic plea bargain with a sentence of four years before any plea offer was made by the government. *See **Motion by a Person in Federal Custody to Vacate, Set Aside and Correct a Conviction and Sentence Pursuant to 28 U.S.C. § 2255** (Doc. 1) at 33.* He also alleges that Mr. Romero urged him to accept a fourteen-year plea offer from the government, without explaining to him the mandatory minimum sentences which he faced under 21 U.S.C. § 841 and 18 U.S.C. § 924(c). *Id.* Mr. Cuevas argues that these deficiencies by Mr. Romero caused him to reject plea offers from the government of four years and fourteen years. *Id.* at 34. He also argues that if he had known that the acceptance of "an initial plea offer" from the government would have precluded the filing of enhanced charges against him, "he would have been in a position to seriously consider the Government's offer." *Id.* at 34.

25.    It is unclear from Mr. Cuevas' argument, how many plea offers he alleges were made by the government before the offer which he accepted was made. The Court finds no evidence in the record of a four-year plea offer having been made and the government asserts that it made only two offers which Mr. Cuevas does not dispute in his traverse. These were: (1) an initial offer which Mr. Cuevas rejected; and (2) a second offer which he accepted. *See **United States' Response to Defendant's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255** (Doc. 7) at 15.* Thus, the Court will not consider Mr. Cuevas' allegations regarding a four-year plea offer which are conclusory and unsupported by the record. With regard to the government's initial offer to Mr. Cuevas, made in a letter to his attorney dated August 13, 2003, the government's offer letter shows that it was not an offer of fourteen years. *See **United States' Response to Defendant's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255** (Doc. 7),* Government Exhibit 3. Instead, the offer provided for a stipulation under the Sentencing Guidelines

that Mr. Cuevas would be entitled to a three-level reduction for acceptance of responsibility and the government's agreement not to seek further charges based on conduct in violation of 18 U.S.C. § 924(c).  *Id.*  The offer also required Mr. Cuevas' agreement to forfeit certain real and personal property.  The offer was contingent on the acceptance of plea offers made to certain of Mr. Cuevas' co-defendants on the same date.  *Id.*

26.    The government argues that Mr. Romero's representation in connection with the initial plea offer was not deficient because the plea offer that Mr. Cuevas ultimately accepted resulted in a shorter sentence than he would have received under the initial plea offer.  *See **United States' Response to Defendant's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255** (Doc. 7)* at 15.  What the Court finds more significant, with regard to the issue of ineffective assistance of counsel and the initial plea offer, is the government's contention, which Mr. Cuevas does not refute in his traverse, that certain of his co-defendants did not accept their plea offers which was a condition of the initial plea offer to Mr. Cuevas.  Because the initial plea offer was rejected by Mr. Cuevas' co-defendants, even if Mr. Cuevas had accepted the plea offer, it would not have gone forward since the government required all defendants to accept the offer.  Therefore, regardless of whether Mr. Cuevas' counsel was ineffective in failing to adequately explain the consequences of this plea, including the government being precluded from filing charges that would enhance Mr. Cuevas' sentence,  his argument is moot and, therefore, he cannot show the requisite prejudice required by the *Strickland* standard for ineffective assistance of counsel with regard to this claim.

### *Failure to Conduct an Adequate Investigation*

27.    Finally, Mr. Cuevas contends that Mr. Romero rendered ineffective assistance by failing to conduct an adequate investigation of his case.  *See **Motion by a Person in Federal Custody to Vacate, Set Aside and Correct a Conviction and Sentence Pursuant to 28 U.S.C. § 2255***

(*Doc. 1*) at 34-37.  Mr. Cuevas admits that Mr. Romero reviewed the discovery provided by the government in his case and spoke with him; however, he alleges, with no support in the record, that Mr. Romero failed to investigate unspecified witnesses who Mr. Cuevas says could have testified that he was merely present during drug dealing activities of his brother, Arturo Cuevas, and that he had a legitimate source for all of his income during the period at issue.[16]  *Id.* at 34.  Mr. Cuevas also alleges, with no support in the record, that an adequate investigation "may have revealed" that his brother Arturo or alleged informant Jose Medrano were attempting to falsely implicate him for their own drug-dealing activities.  *Id.* at 36.  Mr. Cuevas argues that Mr. Romero persuaded him to accept a guilty plea to cover up his failure to conduct a proper investigation.  *Id.* at 34.  Mr. Cuevas contends that he would not have pleaded guilty if Mr. Romero had done an adequate investigation. *Id.* at 37.

28.     "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.  In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."  *Strickland v. Washington*, 466 U.S. at 691.  "In giving shape to the perimeters of this range of reasonable professional assistance, *Strickland* mandates that '[p]revailing norms of practice as reflected in American Bar Association Standards and the like, . . . are guides to determining what is reasonable, but they are only guides.'"  *Nix v. Whiteside*, 475 U.S. 157, 165 (1986) (internal citation omitted).

29.     Aside from Mr. Cuevas' conclusory allegations, he points to no specific evidence in the record demonstrating that a more thorough investigation by his counsel would have affected the

---

[16]Mr. Cuevas identifies only one witness by name, attorney Steven Murphy, who he alleges could have shown that the money in Mr. Cuevas' savings account at the Bank of America was from a legitimate source.  *See* ***Motion by a Person in Federal Custody to Vacate, Set Aside and Correct a Conviction and Sentence Pursuant to 28 U.S.C. § 2255*** (*Doc. 1*) at 36.

outcome of his case or his bargaining position in plea negotiations.   Nor has he shown how testimony that he was merely present at his brother's drug dealing activities and had legitimate sources of income, which the government does not dispute, would make a difference in his case.   Thus, Mr. Cuevas has not shown that Mr. Romero's performance in this regard was defective or that it prejudiced Mr. Cuevas.   Therefore, this claim is without merit.

### *Evidentiary Hearing*

30.     Because Mr. Cuevas' motion and the files and records of this case show that he is not entitled to relief, an evidentiary hearing is not required.   *See* 28 U.S.C. § 2255 (evidentiary hearing not required if §2255 motion and files and records of the case "conclusively show that the prisoner is entitled to no relief"); *see also United States v. Lopez*, 100 F.3d 113, 119 (10th Cir. 1996) (district court is required to conduct an evidentiary hearing under §2255, "[u]nless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief.") (internal quotation marks and citations omitted).  *See also Hatch v. State of Oklahoma*, 58 F.3d 1447, 1457 (10th Cir. 1995) (overruled in part on other grounds by *Daniels v. United States*, 254 F.3d 1180, 1188 n.1 (10th Cir. 2001) (conclusory allegations are not sufficient to warrant an evidentiary hearing on ineffective assistance of counsel).

### RECOMMENDED DISPOSITION

For the foregoing reasons, the undersigned recommends that Mr. Cuevas' ***Motion by a Person in Federal Custody to Vacate, Set Aside and Correct a Conviction and Sentence Pursuant to 28 U.S.C. § 2255*** (*Doc. 1*) be **DENIED**, without an evidentiary hearing, and this case be **DISMISSED WITH PREJUDICE**.

*Lourdes A. Martínez*
_____
**Lourdes A. Martínez**

**United States Magistrate Judge**